UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| H.A.C.F<br><br>Petitioner,<br><br>v.<br><br>JOHN TSOUKARIS, Field Office Director of Enforcement and Removal Operations, New Jersey Field Office, Immigration and Customs Enforcement; Todd LYONS, Acting Director, Immigration and Customs Enforcement; Kristi NOEM, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; Pamela BONDI, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

1

# INTRODUCTION

1. Petitioner Hugo Alejandro Caldera Ferrer ("Petitioner") is a Venezuelan national who holds Temporary Protected Status ("TPS") under 8 U.S.C. § 1254a. TPS holders may not be detained or deported so long as their TPS is valid. The TPS statute provides that "[a]n alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4) (emphasis added). That protection remains available even if the TPS holder has a final removal order or lacks other immigration status, because the government "shall not remove the alien from the United States during the period in which such [TPS] status is in effect." 8 U.S.C. § 1254a(a)(1)(A). See also 8 U.S.C. § 1254a(a)(5); 8 U.S.C. § 1254a(g).

2. While Respondent DHS Secretary Kristi Noem purported to rescind TPS for Venezuela, for purposes of this habeas petition, Petitioner's TPS must be deemed valid. On December 10, 2025, the United States District Court for the Northern District of California granted declaratory relief and declared unlawful Respondent Noem's vacatur of the January 17, 2025 extension of TPS for Venezuela and subsequent termination of Venezuela's 2023 designation in a case brought by the membership organization National TPS Alliance. *Nat'l TPS Alliance v. Noem*, No. 25-cv-01766-EMC, 2025 WL 3539156, at *3 (N.D. Cal. Dec. 10, 2025) (hereinafter "NTPSA" and "December 10 Order"). The December 10 Order in NTPSA has preclusive effect in Petitioner's habeas case, controlling the legal question of whether members of the National TPS Alliance ("NTPSA"), such as Petitioner, retain TPS. *See* Exh. A. This Court must therefore find Petitioner's detention unlawful and order his release.

3. Petitioner has now been detained by U.S. Immigration and Customs Enforcement ("ICE") since February 05, 2026—approximately seven (7) days as of February 12, 2026— despite the unambiguous statutory command that TPS holders may not be detained or deported while TPS remains valid. See Exh. B DHS Warrant for Arrest of Alien, DHS Notice of Custody Determination.

4. Petitioner challenges his detention as a violation of the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment.

5. Petitioner respectfully requests that this Court grant a Writ of Habeas Corpus and order Respondents to release him from custody. Petitioner seeks habeas relief under 28 U.S.C. § 2241, which is the proper vehicle for challenging civil immigration detention. *See Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## CUSTODY

6. Petitioner is in the physical custody of Respondents. Petitioner is imprisoned at Delaney Hall Detention Facility 451 Doremus Avenue, Newark, NJ 07105, an immigration detention facility in Newark, New Jersey. Petitioner is under the direct control of Respondents and their agents.

## JURISDICTION

7. Petitioner is in the physical custody of Respondents at Delaney Hall Detention Facility 451 Doremus Avenue, Newark, NJ 07105.

8. This action arises under the Constitution of the United States and the Immigration and

Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*

9. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

10. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

11. Venue is proper in this District under 28 U.S.C. §§ 1391 and 2242 because at least one Respondent is in this District, Petitioner is detained in this District, Petitioner's immediate physical custodian is located in this District, and a substantial part of the events giving rise to the claims in this action took place in this District. *See generally Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).

## PARTIES

12. Petitioner is H.A.C.F. After arresting Petitioner in New York, New York, on information and belief, ICE did not set bond and Petitioner is unable to obtain review of his custody by an immigration judge, pursuant to the Board's decisions in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025) and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), notwithstanding the nationwide holding in *Maldonado Bautista v. Noem*, 5:25-cv-01873-SSS-BFM (Dec. 18, 2025 N.D. Cal.), as reports indicate that immigration judges are declining to follow the federal court's decision.

13. Respondent JOHN TSOUKARIS is the Director of the New Jersey Field Office of ICE's

Enforcement and Removal Operations division. As such, Respondent Tsoukaris is the immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

14. Respondent Todd M. Lyons is named in his official capacity as the Acting Director of Immigration and Customs Enforcement. As the Acting Director of ICE, he is responsible for the administration and enforcement of the immigration laws of the United States and routinely transacts business in this District. He supervises Respondent LaDeon Francis. His address is ICE, Office of the Principal Legal Advisor, 500 12th St. SW, Mail Stop 5900, Washington, DC 20536-5900.

15. Respondent Kristi Noem is the Secretary of the Department of Homeland Security. She is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Ms. Noem has ultimate custodial authority over Petitioner and is sued in her official capacity. Respondent Noem's address is U.S. Department of Homeland Security, 800 K Street, N.W. #1000, Washington, District of Columbia 20528.

16. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens. DHS's address is U.S. Department of Homeland Security, 800 K Street, N.W. #1000, Washington, District of Columbia 20528.

17. Respondent Pamela Bondi is the Attorney General of the United States. She is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. She is sued in her official

capacity. Respondent Bondi's address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530.

18. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings. EOIR's address is 5107 Leesburg Pike, Falls Church, VA 22041.

## STATEMENT OF FACTS

## I. PETITIONER IS DETAINED DESPITE HAVING TEMPORARY PROTECTED STATUS FROM VENEZUELA

19. Petitioner came to the United States prior to July 31, 2023. Petitioner entered the United States on or about May 4, 2021 with a visitor visa and later applied for TPS on or about 2024 pursuant to the Venezuela designation of TPS. Petitioner's TPS was granted See Ex. C, and he has consistently re-registered since that initial registration, including pursuant to the January 17, 2025 extension, which extended protection for Venezuelan TPS beneficiaries through October 2, 2026. Petitioner's TPS/EAD documentation and related proof of TPS re registration. *See* Ex. D.

20. Petitioner is a member of the National TPS Alliance. *See* Ex. E.

21. ICE officers took Petitioner into custody in Arverne, New York on or about February 05, 2026.

## II.    TEMPORARY PROTECTED STATUS FOR VENEZUELA

22. On the last day of his first term, President Trump designated Venezuela for Deferred Enforced Departure—a form of nationality-based, discretionary relief from deportation—because Venezuela was experiencing "the worst humanitarian crisis in the Western Hemisphere in recent memory." 86 Fed. Reg. 6,845, 6,845 (Jan. 19, 2021). President Trump's action permitted approximately 300,000 Venezuelan refugees to live and work here for 18 months. Memorandum re Deferred Enforced Departure for Certain Venezuelans, 86 Fed. Reg. 6845 (Jan. 19, 2021).

23. Shortly afterwards, on March 9, 2021, then-DHS Secretary Mayorkas designated Venezuela for TPS, allowing Venezuelans residing in the U.S. since March 8, 2021 to apply for protection. 86 Fed. Reg. 13,574 (Mar. 9, 2021). He did so again on October 3, 2023, allowing more recently arrived Venezuelans to apply. 88 Fed. Reg. 68,130 (Oct. 3, 2023).

24. DHS twice extended the 2021 designation of TPS for Venezuela, providing protections through September 10, 2025 to TPS holders who initially registered in 2021. 87 Fed. Reg. 55,024 (Sept. 8, 2022); 88 Fed. Reg. at 68,130.

25. On January 17, 2025, the DHS Secretary extended the 2023 Venezuela Designation by 18 months, through October 2, 2026. 90 Fed. Reg. 5,961 ("January 2025 Extension"). DHS cited Venezuela's ongoing "complex, serious and multidimensional humanitarian crisis," which has "disrupted every aspect of life," and concluded that the "extraordinary and temporary conditions supporting Venezuela's TPS designation remain." *Id.* at 5,963 (citation omitted).

26. In the extension order, DHS also streamlined the registration process for TPS holders by consolidating them into a single track, "allow[ing] existing beneficiaries of either the

2021 or 2023 TPS designation to seek an 18-month extension of status through October 2, 2026." *Id*. at 5,962.

27. On February 3, 2025, just days after she took office, Respondent Secretary Noem purported to "vacate" DHS' January 17 extension of TPS for Venezuela. 90 Fed. Reg. 8805 (Feb. 3, 2025). That decision was the first vacatur of a TPS extension in the 35-year history of the TPS statute.

28. On February 5, 2025, DHS published a notice in the Federal Register purporting to terminate the 2023 Venezuela Designation. 90 Fed. Reg. 9040 (Feb. 5, 2025).

29. On September 8, 2025, DHS published a notice in the Federal Register purporting to terminate the 2021 designation of TPS for Venezuela. 90 Fed. Reg. 43225 (Sept. 8, 2025).

### LEGAL CHALLENGE TO VENEZUELA'S TPS TERMINATION

30. On February 19, 2025, the National TPS Alliance and seven individual Venezuelan TPS holders sued the federal government, alleging that the vacatur of the January 17, 2025 extension of TPS for Venezuela and subsequent termination of Venezuela's 2023 TPS designation were contrary to the TPS statute in violation of the Administrative Procedure Act and unlawful under the Fifth Amendment. *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC (N.D. Cal. Filed Feb. 19, 2025).

31. On December 10, 2025, the district court in *NTPSA* issued a final judgment declaring the vacatur of the January 17, 2025 extension of TPS for Venezuela and termination of Venezuela's 2023 TPS designation unlawful. *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 3539156, at *3 (N.D. Cal. Dec. 10, 2025) ("*NTPSA* December Order").

The court stayed its order for two weeks to permit the government to appeal and/or seek a stay. *Id*. The government did neither.

32. Pursuant to the NTPSA December 10 Order, Petitioner retains TPS because Defendants' actions purporting to deprive them of that status—*i.e.,* the vacatur of the January 17, 2025 extension and the termination of Venezuela's 2023 designation—were unlawful.

33. The *NTPSA* December 10 Order controls as to the question of whether members of the National TPS Alliance—the lead plaintiff in *NTPSA*—retain their TPS status.

34. A declaratory judgment is a final judgment on the merits which defines the legal duties among the parties. *See* 28 U.S.C. 2201 ("Any such declaration shall have the force and effect of a final judgment[.]"); *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 952 (9th Cir. 2004) (cleaned up, citation omitted) ("A declaratory judgment is a binding adjudication that establishes the rights and other legal relations of the parties where those rights are in doubt.").

35. A final merits judgment, including a declaratory judgment, has preclusive effect on future proceedings involving the same parties. *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023) ("the point of a declaratory judgment 'is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata,'" *citing* 18A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4446 (3d ed. Supp. 2022)).

36. "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. [E]ven if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long

as the judgment in the first suit remains unmodified. Accordingly, [a] case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) (internal cites and quotations omitted); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).

## LEGAL FRAMEWORK

37. The Court need analyze only one statutory provision to resolve this habeas petition. The TPS statute unequivocally prohibits the detention of persons with valid TPS, and Petitioner must be released. See 8 USC 1254a(a)(1)(A), (d)(4) ("[a]n alien provided temporary protected status under this section *shall not be detained* by the Attorney General") (emphasis added).[1] It is hard to imagine a clearer statutory mandate proscribing detention.

38. The Court need not delve further in an attempt to understand other aspects of Petitioner's immigration status, because TPS protection remains valid even if the TPS holder has a final removal order or lacks other immigration status. 8 U.S.C. 1254a(a)(1)(A) (the government "shall not remove the alien from the United States during the period in which such [TPS] status is in effect."). Indeed, individuals with a final order of removal are statutorily eligible for TPS and may not be denied TPS if otherwise eligible on the basis of that removal order. 8 U.S.C. 1254a(a)(5) (TPS statute provides no authority to "deny temporary protected status to an alien based on the alien's immigration status"). *See also* 8 U.S.C. 1254a(g) (TPS statute constitutes the exclusive authority for affording nationality-based protection to "otherwise deportable" non-citizens). For that reason alone, this Court should grant the

---

[1] "Attorney General" in Section 1254a now refer to the Secretary of the Department of Homeland Security. *See* 8 U.S.C. 1103; 6 U.S.C. 557.

writ and order Petitioner's immediate release. *See* 28 U.S.C. 2241(c)(3) (authorizing writ for people detained in violation of federal law).

39. Should the Court nonetheless choose to address constitutional questions, it should also find that Petitioner's detention violates the Due Process Clause of the Fifth Amendment. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause [of the Fifth Amendment] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

40. Petitioner's detention violates the Fifth Amendment's protection for liberty, for at least three related reasons. First, immigration detention must always "bear[] a reasonable relation to the purpose for which the individual was committed." *Demore v. Kim*, 538 U.S. 510, 527 (2003) (citing *Zadvydas*, 533 U.S. at 690). Where, as here, the government has no authority to deport Petitioner, detention is not reasonably related to its purpose.

41. Second, because Petitioner is not "deportable" insofar as the TPS statute bars his deportation, the Due Process Clause requires that any deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest. *See Reno v. Flores*, 507 U.S. 292, 301–02 (1993) (holding that due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest"); *Demore*, 538 U.S. at 528 (applying less rigorous standard for "deportable aliens"). Petitioner's on-going imprisonment obviously cannot satisfy that rigorous standard.

42. Third, at a bare minimum, "the Due Process Clause includes protection against *unlawful* or arbitrary personal restraint or detention." *Zadvydas v. Davis*, 533 U.S. 678, 718 (2001) (Kennedy, J., dissenting) (emphasis added). Where federal law explicitly prohibits an

individual's detention, their detention also violates the Due Process Clause.

43. Petitioner may not be legally detained or deported, and this Court should order Petitioner's immediate release him from ICE custody. *See* 28 U.S.C. 2241(c)(3) (authorizing writ for people detained in violation of federal law).

## CLAIMS FOR RELIEF

### COUNT ONE

### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT – 8 U.S.C. § 1254a

44. Petitioners reallege and incorporate by reference each and every allegation contained above.

45. Section 1254a of Title 8 of the U.S. Code governs the treatment of TPS holders, including their detention and removal under federal immigration law.

46. Section 1254a(d)(4) states "[a]n alien provided temporary protected status under this section *shall not be detained* by the Attorney General on the basis of the alien's immigration status in the United States." (emphasis added). There is no exception to this rule provided in the statute.

47. Thus, Petitioners' detention violates Section 1254a, and he is entitled to immediate release from custody.

### COUNT TWO

### VIOLATION OF THE DUE PROCESS CLAUSE

### OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

48. Petitioners reallege and incorporate by reference each and every allegation contained

above.

49. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. See generally *Reno v. Flores*, 507 U.S. 292 (1993); *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Demore v. Kim*, 538 U.S. 510 (2003).

50. Petitioners' detention violates the Due Process Clause because it is not rationally related to any immigration purpose; because it is not the least restrictive mechanism for accomplishing any legitimate purpose the government could have in imprisoning Petitioner; and because it lacks any statutory authorization.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioners pray that this Court grant the following relief:

A. Assume jurisdiction over this matter; and

B. Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. 2243; and

C. Declare that Petitioner's detention violates the Immigration and Nationality Act, and specifically 8 U.S.C. 1254a; and

D. Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment; and

E. Grant a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody; and

F. Enjoin Petitioners from further detaining Petitioner so long as the December 10 Order

    remains in effect; and

G.   Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

H.   Grant such further relief as this Court deems just and proper.

Dated this 12 day of February 2026.

/s/ *Jay R. McDaniel*

_____
Jay R. McDaniel, Esq.
629 Parsippany Road
Parsippany, NJ 07054
(973) 403-1100
973-403-0010

Pro Hac Vice Pending:
Roger Asmar, Esq Ross & Asmar LLC 499 7th Avenue
South Tower, 23rd Floor New York, NY 10018 Phone: (212) 736-4202
Facsimile: (212) 736-2873